**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No.191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| AMIN JAMES and DAVID SEVESIND, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE WALT DISNEY COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**NATURE OF THE ACTION**

1. This is a class action suit brought against Defendant The Walt Disney Company ("Defendant" or "Disney") for procuring the wiretapping of electronic communications of visitors to ESPN.com by third party Oracle America, Inc. ("Oracle"). As alleged below, through its Blue Kai Pixel, Oracle, as procured by Disney, secretly observed, recorded, and otherwise intercepted website visitors' electronic communications with Defendant and used that data to improve its own marketing and analytical capabilities, as well as those of Defendant. By doing so, Defendant has violated the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. §§ 5701, *et seq.* ("WESCA") and California Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA").

2. On or about December 2022, Mr. James visited the Website. During the visit, Oracle, as procured by Defendant, recorded and thereby intercepted Plaintiff James's electronic communications in real time with Defendant.

3. On or about May 2023, Mr. Sevesind visited the Website. During the visit, Oracle, as procured by Defendant, recorded and thereby intercepted Plaintiff Sevesind's electronic communications in real time with Defendant.

4. Plaintiffs bring this action on behalf of themselves and a class of all persons whose electronic communications were intercepted through the use of Defendant's wiretap on the ESPN website.

**PARTIES**

5. Plaintiff Amin James is a resident of Philadelphia, Pennsylvania and has an intent to remain there, and is therefore a citizen of Pennsylvania. On or about December 2022, prior to the filing of this lawsuit, Mr. James browsed ESPN.com on his computer. Mr. James was in Philadelphia when he visited the website. During the visit, Mr. James's keystrokes, mouse clicks, and other communications – such as the specific web pages he viewed – were intercepted in real time by Oracle. Mr. James was unaware at the time that his keystrokes, mouse clicks, and other electronic communications were being intercepted in real-time by Oracle, nor did Mr. James consent to the same.

6. Plaintiff David Sevesind is a resident of Pomona, California and has an intent to remain there, and is therefore a citizen of California. On or about May 2023, prior to the filing of this lawsuit, Mr. Sevesind browsed ESPN.com on his computer. Mr. Sevesind was in Pomona when he visited the website. During the visit, Mr. Sevesind's keystrokes, mouse clicks, and other communications – such as the specific web pages he viewed – were intercepted in real time by Oracle. Mr. Sevesind was unaware at the time that his keystrokes, mouse clicks, and other electronic communications were being intercepted in real-time by Oracle, nor did Mr. Sevesind consent to the same.

7. Defendant The Walt Disney Company is a Delaware limited liability company with its principal place of business at 500 South Buena Vista Street, Burbank, California 91521.

8. The Walt Disney Company owns and operates ESPN.com. ESPN.com was visited over six hundred million times in September 2022 alone.[1]

9. Defendant procured Oracle Advertising and Customer Experience to manage and collect its website visitors' data.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

11. This Court has general personal jurisdiction over Defendant because Defendant maintains its principal place of business in California.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to this action occurred in this District.

## STATEMENT OF FACTS

I. **Oracle Intercepts Communications Between Website Visitors And Websites For Marketing Purposes**

13. Oracle is software company that provides many services and products to businesses

---

[1] https://www.similarweb.com/website/espn.com/#overview

and enterprises.

14. One line of products is the "Oracle Advertising and Customer Experience" ("Oracle CX").

15. Oracle CX is designed to make "every customer interaction matter by connecting all [Oracle CX client's] business data across advertising, marketing, sales, commerce, and service."[2]

16. Oracle CX is used to "[b]uild a complete view of your customer and their every interaction—no matter how, when, where, or with whom they engage."[3]

17. Oracle CX offers a marketing tool ("Oracle BlueKai" or "BlueKai") through which Oracle can collect data on Oracle's clients' customers in order to market to and attract new customers.

18. Oracle BlueKai is a data management platform ("DMP") that "[c]ollects, organizes, and activates audience data from various online, offline, and mobile sources. Using that data, [website owners] can then build detailed customer profiles for targeted advertising and personalization initiatives."[4]

> **What is a data management platform (DMP) and how does it work?**
>
> A DMP collects, organizes, and activates audience data from various online, offline, and mobile sources. Using that data, you can then build detailed customer profiles for targeted advertising and personalization initiatives.
>
> Think of a DMP as a large data warehouse where you can store, organize, and analyze all the customer data you've collected—including behavioral, geographic, and demographic data. You can gather data directly by adding simple snippets of code called 'tags' to your web pages. The DMP will then track the user's journey.
>
> The insights provided include the URL and keywords and who has visited certain pages. Of course, it can also import data, such as loyalty program profiles, email lists, social media, lead tracking data, and in-person point of sale information—whatever data you have can come together in your DMP.
>
> DMPs then group users with matching or similar attributes into appropriate audience segments. Expand your clearly defined audiences by creating lookalike audiences, which are potential customers with characteristics that match your ideal customer. Then you can use that data to drive personalized and contextual advertising that your customers and prospects are more likely to engage with.
>
> The result? You have a comprehensive snapshot that provides insights on how to best engage with your customers and deliver the level of personalization they demand.

---

[2] https://www.oracle.com/cx/

[3] *Id.*

[4] https://blogs.oracle.com/marketingcloud/post/implement-a-data-management-platform-dmp-to-understand-and-multiply-your-audience

19. Oracle describes Oracle BlueKai DMP "as a large data warehouse where you can store, organize, and analyze all the customer data you've collected—including behavioral, geographic, and demographic data. You can gather data directly by adding simple snippets of code called 'tags' to your web pages. The DMP will then track the user's journey."

20. Oracle BlueKai is designed to "[u]se data to drive personalized and contextual advertising that engages and wins over relevant audiences."[5] This is done by "ingest[ing]" website owners' customer data, "[c]lassify[ing] and organiz[ing] data into targetable user segments," and serving those customers "third-party datasets" provided by Oracle, who matches those segments with targeted advertising.[6]

**Connect across devices**

## Create effective cross-device campaigns

Conduct personalized marketing at the individual level with a consistent message across devices.

- Expand your audience by using Oracle ID Graph to bring in third-party data across different marketing channels and devices.

- Use a private ID graph to extend your reach and leverage your ID linkages for cross-device customer targeting.

- Reach your customers/prospects across the open web and social channels that they spend time on by activating the cross-device extension.

21. Oracle BlueKai is also used to "conduct personalized marketing" to prospective customers across their devices on "web and social channels that they spend time on."[7]

22. Oracle BlueKai is also used to import data—which Oracle collects from other Oracle clients' deployment of BluKai—to "group users with matching or similar attributes into appropriate audience segments." Oracle clients can then "use that data to drive personalized and

---

[5] https://www.oracle.com/cx/marketing/data-management-platform/#documentation
[6] *Id.*
[7] *Id.*

contextual advertising that your customers and prospects are more likely to engage with."

23. To enable Oracle to track website users, website owners insert a "Core Tag" – "bk-coretage.js" – into their webpages and applications, unbeknownst to the webpage or application visitor.

24. When a user visits a website that has Core Tag in the code, the user's browser sends a "GET request" to the website server. The server responds by sending HTML code to the user's browser. The HTML code includes a JavaScript that contains the Core Tag which instructs the user's browser to send another GET request to Oracle. Oracle then utilizes the Core Tag to collect data for BlueKai. Through this process, Oracle is able to extract the website visitor user attributes.[8]



---

[8] https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloud-help-center/IntegratingBlueKaiPlatform/DataIngest/coretag_implementation.html

25. Oracle intercepts this user data in real-time (*i.e.*, simultaneously with a user's interaction with a website).

26. The data Oracle BlueKai collects includes but is not limited to:
    (a) HTML page properties;
    (b) Pages viewed;
    (c) Purchase intent[9];
    (d) Add-to-cart actions;
    (e) Keystrokes;
    (f) Search terms entered; and
    (g) "Mouse click events"[10]

27. After extracting user data from a website, Oracle's Core Tag creates and sends a "unique user ID" to Oracle's "Data Cloud" platform "so [the ID] can be synchronized to the network of user profiles that are linked together in the Oracle ID Graph."

**1. Original Audience** — A device identified by a cookie is classified into an audience. (Foodies / Cookie)

**2. ID Graph** — The ID Graph links the original device to an anonymous but identifiable person and to other devices associated with that person. (Cookie, MAID, Cookie, MAID)

**3. Extended Audience** — The audience is extended to include the additional devices. (Foodies — Cookie, MAID, Cookie, MAID)

28. Oracle's ID Graph is used to identify users who utilize different devices. "The

---

[9] "Purchase behavior insights enables [website owners] to understand your audience's buying habits, based on actual purchase data sourced from Oracle Data Cloud partners." *See* https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloud-help-center/Platform/Audiences/AudienceInsights/insights_data.html?Highlight=purchase%20intent.

[10] https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloud-help-center/Platform/ManagingTags/CreatingContainers/capture_mouse_clicks.html

Oracle ID Graph helps marketers connect identities across disparate marketing channels and devices to one customer."[11]



---

[11] https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloud-help-center/IntegratingBlueKaiPlatform/id_management.html#oidg

29. Oracle correlates visitors' web activity with the ID and create a "segment" profile of the visitor. Oracle then feeds the visitor advertisements that match the visitor's purported segment profile. Oracle offers "more than 30,000 data attributes" to Oracle clients so to "power" their "direct marketing initiatives and let [them] connect with [their] target audience anywhere on the internet."[12]

30. Oracle maintains a symbiotic relationship with their clients. Oracle does not simply manage their clients' data, Oracle also retains and uses the same data to assist other clients. With each piece of data Oracle collects, the BlueKai profiling software becomes even more useful. Because BlueKai's success depends on their data accumulation, Oracle does not merely profit monetarily from each client, but also builds BlueKai's profiling apparatus.

31. To summarize, website owners a Core Tag onto their websites, which enables Oracle BlueKai to collect significant user data. Oracle then associates that data to a specific user, compiles that data with other data about the user Oracle has in its possession, and provides that data to website owners to enable website owners to hyper target users in marketing campaigns. Oracle then retains that data and uses it to assist other website owners.

II. **Oracle, As Procured By Defendant, Intercepts Communications On ESPN.com Between Visitors And Defendant, Including Plaintiffs'**

32. Defendant owns and operates the ESPN website.

33. Defendant enabled, allowed, or otherwise procured Oracle to intercept communications between Defendant and visitors to the ESPN website through a contractual arrangement.

34. Defendant procured Oracle to embed the bk-coretage.js CoreTag JavaScript on the ESPN website:

//

//

//

//

---

[12] https://docs.oracle.com/en/cloud/saas/data-cloud/data-cloud-help-center/AudienceDataMarketplace/AudienceDataMarketplace.html



35. BlueKai operates on ESPN in the same manner as alleged above.

36. Through the BlueKai Core Tag, Oracle at least the following information from all ESPN website visitors:

 (a) Website document location;
 (b) Website referrer;
 (c) Website title;
 (d) HTML page properties;
 (e) Add-cart actions;
 (f) Keystrokes;
 (g) Search terms; and
 (h) Mouse click events.

37. Plaintiff James and other Class Members accessed the ESPN website through their internet browsers in Pennsylvania. Upon having their browsers access the website in Pennsylvania, the browser sent a GET request from Pennsylvania to the ESPN website's servers. The ESPN website then sent a signal to web browser instructing the browser in Pennsylvania to send another GET request to Oracle. The web browser then sent another GET request from Pennsylvania to

1  Oracle, which then began tracking Plaintiff James and Class Member's communications on ESPN.

2      38.    Plaintiff Sevesind and other Class Members accessed the ESPN website through their internet browsers in California. Upon having their browsers access the website in California, the browser sent a GET request from California to the ESPN website's servers. The ESPN website then sent a signal to web browser instructing the browser in California to send another GET request to Oracle. The web browser then sent another GET request from California to Oracle, which then began tracking Plaintiff Sevesind and Class Member's communications on ESPN.

    39.    When Plaintiffs and other Class Members visited ESPN, the contents of their website communications – namely, the pieces of data alleged above – were intercepted in real-time by Oracle as procured by Defendant. Oracle then used that data to create IDs for each website visitor, including Plaintiffs, and to target advertisements to Plaintiffs and other website visitors. Upon information and belief, Oracle also retained this information and subsequently provided it to other website owners to assist these other website owners in their marketing efforts.

## CLASS ALLEGATIONS

    40.    Plaintiffs seek to represent a class of all persons who visited ESPN.com whose electronic communications were intercepted or recorded by Oracle (the "Class").

    41.    Plaintiff James also seeks to represent a subclass of all Pennsylvania residents who visited ESPN.com while in Pennsylvania, and electronic communications were intercepted or recorded by Oracle (the "Pennsylvania Subclass").

    42.    Plaintiff Sevesind also seeks to represent a subclass of all California residents who visited ESPN.com while in California, and electronic communications were intercepted or recorded by Oracle (the "California Subclass").

    43.    Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class Members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

    44.    Common questions of law and fact exist as to all Class members and predominate

over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants have violated the California Invasion of Privacy Act, Cal. Penal Code § 631 ("CIPA") and the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("WESCA"), 18 Pa. C.S. §§ 5701, *et seq.*, and whether class members are entitled to actual and/or statutory damages for the aforementioned violations.

45. The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs, like all other class members, visited the ESPN.com and had their electronic communications intercepted and disclosed to Oracle through the use of Oracle's wiretaps.

46. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

47. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

48. Plaintiffs bring all claims in this action individually and on behalf of members of the Class against Defendant.

# CAUSES OF ACTION

## COUNT I

**Violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S. §§ 5701, *et seq.***

49. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

50. Plaintiff James brings this claim individually and on behalf of the members of the proposed Class and Pennsylvania Subclass against Defendant.

51. To establish liability under The Pennsylvania Wiretapping and Electronic Surveillance Control Act, Plaintiffs need only to establish that Defendant "procure[d] any other person to intercept [electronic] communication." 18 Pa. C.S. § 5725.

52. "Electronic communication" is defined as '[a]ny transfer of signs, signals, writing, images, sounds, ***data or intelligence of any nature*** transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo-optical system." 18 Pa. C.S. § 5702 (emphasis added).

53. As alleged above, Oracle intercepts the contents of ESPN.com visitors' electronic communications because Plaintiffs' and Class Member's electronic communications because Oracle BlueKai "reroute[d] communications to an interceptor," Oracle. *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 130 (3d Cir. 2022).

54. Plaintiff James's and Pennsylvania Subclass Members' electronic communications were intercepted in Pennsylvania, which is "the point at which the signals [*i.e.*, Plaintiff's and the Pennsylvania Subclass's electronic communications] were routed to [Oracle's] servers." *Id.* at 132.

55. At all relevant times, Defendant procured Oracle to intercept Plaintiff James's and Pennsylvania Subclass Members' communications with ESPN.com.

56. Plaintiff James and Pennsylvania Subclass Members did not consent to Defendant's actions in procuring Oracle to wiretap visitors to ESPN.com. Nor did Plaintiff James or Pennsylvania Subclass Members consent to Oracle's intentional access, interception, reading, learning, recording, and collecting of Plaintiff James and Pennsylvania Subclass Members' electronic communications.

57. The violation of WESCA constitutes an invasion of privacy sufficient to confer

Article III standing. *In re Facebook Internet Tracking Litigation*, 956 F.3d 589, 598-99 (9th Cir. 2020).

58.  Plaintiff James and Pennsylvania Subclass Members seek all relief available under 18 Pa. C.S. § 5725, including statutory damages of $100 dollars per day for each day of violation or $1,000, whichever is higher.

**COUNT II**
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 631**

59.  Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

60.  Plaintiffs bring this claim against Defendant individually and on behalf of the Class and California Subclass.

61.  CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978). Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

62. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

63. Oracle's BlueKai is a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

64. Oracle is a "separate legal entity that offers 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Oracle was a third party to any communication between Plaintiffs and Class Members, on the one hand, and Defendant, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023).

65. At all relevant times Oracle willfully and without the consent of all parties to the communication, or in any unauthorized manner, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and putative Class and California Subclass Members, on the one hand, and Defendant's Website, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

66. At all relevant times, Defendant aided, agreed with, employed, conspired with, or otherwise enabled Oracle to wiretap consumers to the Website using Chat and to accomplish the wrongful conduct at issue here.

67. Plaintiffs and Class and California Subclass Members did not consent to Oracle's intentional access, interception, reading, learning, recording, and collection of Plaintiffs and Class Members' electronic communications. Nor did Plaintiff Sevesind and Class and California Subclass Members consent to Defendant aiding, agreeing with, employing, or otherwise enabling Oracle's conduct.

68. Because Defendant is headquartered in California, a CIPA § 631 can be pursued by all users of the Website nationwide. *Bona Fide Conglomerate, Inc. v. SourceAmerica*, 2016 WL 3543699, at *6 (S.D. Cal. June 29, 2016) (finding that non-resident plaintiff had statutory standing under CIPA where recordings by California defendant took place in California); *see also Carrese v. Yes Online Inc.*, 2016 WL 6069198, at *4 (C.D. Cal. Oct. 13, 2016) (same and noting "[c]ourts have declined to read CIPA's legislative intent as a limitation on standing when the statute does not impose any residency requirements"); *Valentine v. NebuAd, Inc.*, 804 F. Supp. 2d 1022, 1028 (N.D. Cal. 2011) ("A legislative purpose that articulates an interest in protecting those within California is not inconsistent with also allowing non-Californians to pursue claims against California residents.").

69. The violation of CIPA § 631(a) constitutes an invasion of privacy sufficient to confer Article III standing.

70. Plaintiffs and Class and California Subclass Members seek all relief available under Cal. Penal Code § 637.2, including statutory damages of $5,000 per violation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a) For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representative of the Class and Subclasses, and naming Plaintiffs' attorneys as Class Counsel to represent the Class and Subclasses;

(b) For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c) For an order finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest in all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and cost of suit.

**JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated:  May 22, 2023                    Respectfully submitted,

**BURSOR & FISHER, P.A**.

By: */s/ L. Timothy Fisher*
     L. Timothy Fisher

L. Timothy Fisher (State Bar No.191626)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail: ltfisher@bursor.com

*Attorneys for Plaintiffs*